**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**



| | | |
|---|---|---|
| EMERGING AUTOMOTIVE LLC, | § | |
| | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | CIVIL ACTION NO.  2:23-CV-00437-JRG |
| v. | § | (LEAD CASE) |
| | § | |
| KIA   CORPORATION,   KIA   AMERICA, | § | |
| INC., | § | |
| | § | |
| *Defendants*. | § | |

| | | |
|---|---|---|
| EMERGING AUTOMOTIVE LLC, | § | |
| | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO.  2:23-CV-00434-JRG |
| | § | (MEMBER CASE) |
| TOYOTA MOTOR CORP., *et al.*, | § | |
| | § | |
| *Defendants*. | § | |

## MEMORANDUM OPINION AND ORDER

### I.    INTRODUCTION

Before the Court is Defendants Kia Corporation and Kia America, Inc.'s Motion to Transfer

Venue to the United States District Court for the Central District of California Pursuant to 28

U.S.C. § 1404(a) (the "Motion"). (Dkt. No. 31). Having considered the Motion and the related

briefing, the Court finds that it should be and hereby is **DENIED**.

## II.   BACKGROUND

Emerging Automotive LLC ("EA" or "Plaintiff") filed this lawsuit against Defendants Kia Corporation ("KC") and Kia America, Inc. ("KUS") (together, the "Kia Defendants" or "Defendants") on September 22, 2023, accusing Defendants of both directly and indirectly infringing U.S. Patent Nos. 10,407,026, 11,738,659, and 9,365,188 (collectively the "Asserted Patents"). (Dkt. No. 1).

On September 20, 2023, two days prior to filing the present action, Plaintiff filed Case No. 2:23-cv-00434-JRG (the "*Toyota* Case") in this district alleging that Toyota Motor North America Inc. and affiliates (collectively, "Toyota" or the "Toyota Defendants") infringe the Asserted Patents and two additional patents. *See Emerging Automotive LLC v. Toyota Motor North America Inc., et al.*, No. 2:23-cv-00434-JRG, Dkt. No. 1 (E.D. Tex. Sep. 20, 2023). On December 13, 2023, given the overlapping nature of the cases, the Court consolidated the *Toyota* Case with the present case (No. 2:23-cv-437-JRG) against the Kia Defendants. (Dkt. No. 15). On January 17, 2024, the Kia Defendants filed this Motion seeking transfer to the Central District of California ("CDCA") for convenience under 28 U.S.C. § 1404(a). (Dkt. No. 31). On February 6, 2024, the Court granted Plaintiff's unopposed request for expedited venue discovery. (Dkt. No. 35).

The Toyota Defendants have not sought transfer from the Eastern District of Texas ("EDTX"). Accordingly, regardless of the disposition of the present Motion, the claims brought by Plaintiff against the Toyota Defendants will be adjudicated by this Court.

## III.   LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it may have been brought." 28 U.S.C. § 1404(a). The question of whether a suit "might have been brought" in the transferee forum

encompasses subject matter jurisdiction, personal jurisdiction, and propriety of venue. *Viking Techs., LLC v. Assurant, Inc.*, No. 2:20-CV-00357-JRG, 2021 WL 3520756, at *1 (E.D. Tex. June 21, 2021) (quoting *Hoffman v. Blaski*, 363 U.S. 335, 343–44 (1960)). If this threshold burden is satisfied, the party seeking transfer must then establish that transfer is warranted in the interest of convenience.

In evaluating a motion to transfer pursuant to § 1404(a), the Court considers the Fifth Circuit's non-exhaustive list of private and public interest factors. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) (*Volkswagen I*). The private interest factors include: (1) "the relative ease of access to sources of proof," (2) "the availability of compulsory process to secure the attendance of witnesses," (3) "the cost of attendance for willing witnesses," and (4) "all other practical problems that make trial of a case easy, expeditious and inexpensive." (*Id.*). The public interest factors include: (1) "the administrative difficulties flowing from court congestion," (2) "the local interest in having localized interests decided at home," (3) "the familiarity of the forum with the law that will govern the case," and (4) "the avoidance of unnecessary problems of conflict of laws of the application of foreign law." (*Id.*).

While a plaintiff's choice of venue is not an express factor in this analysis, the appropriate deference afforded to the plaintiff's choice is reflected in a defendant's elevated burden of proof. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (*Volkswagen II*). To support its claim for a transfer under § 1404(a), the defendant must demonstrate that the transferee venue is "clearly more convenient" than the venue chosen by the plaintiff. (*Id.*). Absent such a showing, however, the plaintiff's choice is to be respected. (*Id.*). "When deciding a motion to transfer under § 1404(a), the Court may consider undisputed facts outside of the pleadings, such as affidavits or declarations, but must draw all reasonable inferences and resolve factual conflicts in favor of the

3

non-moving party." *Hammers v. Mayea-Chang*, No. 2:19-cv-181-JRG, 2019 WL 6728446, at *4 (E.D. Tex. Dec. 11, 2019) (collecting cases).

## IV.   DISCUSSION

The threshold inquiry is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *Volkswagen I*, 371 F.3d at 203. Plaintiff does not dispute that the Complaint could have been filed in the Central District of California. *See* (Dkt. No. 46). Accordingly, the Court finds that this threshold question is satisfied and turns next to the question of convenience.

### A.  Private Interest Factors

#### 1.      *The Relative Ease of Access to Sources of Proof*

Defendants argue that this factor favors transfer because "the relevant evidence within KUS' possession, custody, or control relating to the accused Digital Key technology is located in Irvine, California." (Dkt. No. 31 at 10-11 (citing Dkt. No. 31-1 (Somasekharan Decl.), ¶ 6)). Defendants further contend that "[n]either KUS nor KC are aware of any documents related to the design and development of the accused Digital Key feature of Kia vehicles, or sales and profitability information regarding that feature, located in the Eastern District of Texas." (*Id.* at 11 (citing Dkt. No. 31-3 (Kim Decl.), ¶ 5)). Finally, Defendants argues that "documentary evidence related to the conception and reduction to practice of the invention claimed by the patents-in-suit is likely to be held by the inventors, Angel A. Penilla and Albert S. Penilla, who, on information and belief, reside in California." (*Id.* (citing Dkt. No. 31-6)).

In response, Plaintiff argues that "KUS has offices in this district" in Plano, Texas, and that those offices "house a document server that holds documents concerning sales and marketing of the accused Kia vehicles." (Dkt. No. 46 at 4). Plaintiff further argues that "there are numerous

KUS employees at the Plano office that are relevant to sales and marketing of the accused Kia vehicles, and any documents from these custodians reside in this District as well." (*Id.*). Finally, Plaintiff notes that "KUS does not identify any physical or hard copy documents" in CDCA related to the "design, development, and sale of the accused functionality," only speculation from KUS' declarant that such documents might exist. (*Id.*). With respect to Plaintiff's own documents, Plaintiff represents that its "documents are stored in electronic format and are in Scotts Valley, California, which is in NDCA and hundred miles outside CDCA." (*Id.* (citing Dkt. No. 46-2 (Penilla Decl.), ¶¶ 2-3)).

In reply, Defendants argue that "while there is a server in Texas that stores documents relating to distribution, marketing, and sales of Kia vehicles generally within the Southwest region, that server has 'no documents concerning the design, development, manufacture, marketing, or sale of the accused functionality [i.e., Digital Key or Kia Connect].'" (Dkt. No. 48 at 4 (citing Dkt. No. 46-3 at 8)). As such, Defendants contend that "the server in Texas cannot be afforded the same weight as the servers that support the accused functionality or store documents specifically related to that functionality, all of which are located in CDCA." (*Id.* at 4-5). Defendants further argue that source code developed by third parties including HAEA (located in CDCA) will need to be analyzed to assess Plaintiff's direct infringement allegations in this case. (*Id.* at 5).

In sur-reply, Plaintiff argues that "Defendants proffer no evidence about the relative volume of documents in either District" and that "all that is in the record is that there are some relevant documents on servers in CDCA." (Dkt. No. 51 at 1-2).

The Court finds that this factor is neutral in the transfer analysis. As an initial matter, neither party asserts that any physical documents or evidence exist in either district, lessening the weight of this factor in the transfer analysis. *In re Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th 625,

630 (5th Cir. 2022) (recognizing that electronic evidence is equally accessible in different forums and holding that "[t]he location of evidence bears much more strongly on the transfer analysis when, as in *Volkswagen*, the evidence is physical in nature") (citing *Volkswagen II*, 545 F.3d at 316–17).

With respect to KC's documents in the Republic of Korea and Plaintiff's documents in the NDCA, the Court finds that such electronically-stored documents are equally accessible in either district. *Cf. Lionra Techs. Ltd. v. Fortinet, Inc.*, No. 2:22-CV-00322-JRG-RSP, 2023 WL 7491853, at *3 (E.D. Tex. Nov. 12, 2023) (finding that the defendant had "not shown there would be any difference between sending electronic files from Vancouver to Texas compared to California").

With respect to KUS and HAEA, Defendants contend that relevant information related to the accused technology is maintained electronically in CDCA and Plaintiff contends that documents related to the sales and marketing of the accused Kia vehicles exist in EDTX. Neither Plaintiff nor Defendants identify the quantity of relevant documents stored in either location. On the limited record before it, the Court is not in the position to decide which type of documents are more relevant based on little more than attorney argument. *Cf. Cardware Inc. v. Samsung Elecs. Co.*, No. 2:22-CV-0141-JRG-RSP, 2023 WL 2871052, at *2 (E.D. Tex. Apr. 8, 2023) (finding this factor neutral where "the record establishes that evidence related to design and development is located in the NDCA whereas evidence related to damages is located in the EDTX"). Given that (1) sources of proof are maintained in both districts, (2) all the evidence is apparently stored electronically on servers, and (3) the parties provide no indication as to the quantity of evidence in either district, the Court finds that this factor weighs neutrally in the transfer analysis.

### 2.    *The Availability of Compulsory Process to Secure the Attendance of Witnesses*

Defendants argue that "this factor weighs heavily in favor of transfer" because: (1) "employees of non-party HAEA assist in technical development of the accused Digital Key technology and are located in the Central District of California, within its subpoena power" and (2) "to the extent a trial subpoena is require to compel attendance of the named inventors of the Asserted Patents, they are also located in California and traveling to the Central District would not incur 'substantial expense' for those witnesses." (Dkt. No. 38 at 10 (quoting Fed. R. Civ. P. 45(c))). By contrast, Defendants claim that they are "aware of no non-party witnesses having relevant evidence in the Eastern District of Texas." (*Id.*).

In response, Plaintiff argues that "Defendants fail to identify by name a single-third party *witness* under this factor, and unnamed witnesses cannot be considered in the convenience transfer analysis." (Dkt. No. 38 at 5 (citing *Durret v. Walmart, Inc.*, No. 2:18-cv-00332-JRG, 2018 WL 5630521, at *3 (E.D. Tex. Oct. 31, 2018))). Specifically, Plaintiff contends that "[n]aming three Hyundai-related companies as third-party witnesses is tantamount to failing to name any witnesses at all," as "[a] third-party corporation cannot be called at trial via a Rule 45 trial subpoena." (*Id.* at 6). Plaintiff further argues that "for two of the three Hyundai-related third parties—HAEC and HMG R&D—Defendants admit that any pertinent individuals are in Korea and not subject to compulsory service for trial in any district court, even if there were witnesses identified by name." (*Id.*). Further, Plaintiff contends with respect to HAEA that Defendants simply state that "the HAEA employees with whom [Defendants] work on these technologies are predominantly located in the Los Angeles area," (Dkt. No. 31-1, ¶ 7), which "fails to identify an actual witness by name who is subject to the subpoena power of CDCA." (*Id.*). With respect to its own inventors, Plaintiff argues that: (1) "compulsory service is not necessary for the two named inventors because neither

7

is an unwilling witness;" and (2) "the inventors cannot be counted by Defendants in *both* the compulsory process and willing witness factors, as Kia's motion attempts to do." (*Id.* at 7).

By contrast, Plaintiff argues that there "are third-party prior art witnesses located in the Eastern District of Texas and subject to this Court's subpoena power," specifically the "purported inventors of U.S. Patent No. 8,816,845," including Scott J. Hoover (Allen, Texas), Joseph Hilburn (Frisco, Texas), and Paul Hubner (McKinney Texas). (*Id.*). Plaintiff notes that "Defendants represented that these are relevant witnesses." (*Id.*).[1]

In reply, Defendants argue that Plaintiff "does not dispute that these [Hyundai] third parties have corporate knowledge of the accused functionality and that HAEA employees with that knowledge are located in CDCA"; rather, Plaintiff "argues these third parties should be discounted because their employees are not identified by name." (Dkt. No. 48 at 4). With respect to witnesses in EDTX, Defendants contend that Plaintiff merely "cherry picked from among hundreds of references listed on the Asserted Patents" to identify prior art inventors in Texas, and that these individuals "should be afforded no weight as there is no evidence that this reference is particularly important, and 'inventors of prior art rarely, if ever, actually testify at trial.'" (*Id.* (quoting *Realtime Data, LLC v. Rackspace US, Inc.*, No. 6:16-CV-00961, 2017 WL 772653, at *8 (E.D. Tex. Feb. 28, 2017))).

In sur-reply, Plaintiff first notes that "Defendants do not dispute that two of the third-party companies named—HAEC and HMG R&D—are in Korea and thus not subject to compulsory service in any district court." (Dkt. No. 51 at 4). Plaintiff notes that this leaves only HAEA, which "cannot be subpoenaed to testify at trial" under Rule 45. (*Id.* at 5). Further, Plaintiff notes that "Defendants' assertion that employees of HAEA are relevant and 'predominantly located in the

---

[1] In sur-reply, Plaintiff contends that Defendants identified these individuals as relevant in their initial disclosures. (Dkt. No. 51 at 5 (citing Dkt. No. 51-1)).

Los Angeles area,' strains credibility," as "none are specifically named despite the fact that Defendants purport to work with these folks." (*Id.*).

The Court finds that this factor is neutral in the transfer analysis. The Fifth Circuit has instructed that "the availability of compulsory process receives less weight when it has not been alleged or shown that any witness would be unwilling to testify." *Planned Parenthood*, 52 F.4th at 630–31 (internal quotation omitted). Here, Defendants have neither shown nor alleged that any non-party witnesses would be unwilling to testify in this case. Indeed, Defendants point to the named inventors of the Asserted Patents for this factor, but those individuals—Angel A. Penilla and Albert S. Penilla—affirmatively represent that they are willing witnesses in this case. (Dkt. No. 46-2, ¶¶ 4-5).[2] As such, these named inventors have no bearing on this factor.[3]

The only other potential witnesses Defendants identify for this factor are employees of non-party HAEA who purportedly reside in CDCA.[4] However, Defendants do not identify a single actual witness at HAEA who they expect to testify at trial, despite Plaintiff making that issue central in its Response. On the record before it, the Court has no way of knowing whether one, ten, or zero HAEA employees may be sought for trial testimony, let alone whether any such witnesses would be unwilling and require compulsory process. Defendants seek transfer based on convenience—a request for which *they* bear the burden—and yet Defendants fail to provide the Court with sufficient evidence to conclude that their proposed forum would be any more convenient than this District with respect to this factor.

---

[2] The Court further notes that these named inventors are outside of the absolute subpoena power of the CDCA.

[3] Defendants identify the named inventors under this factor as well as the willing witnesses factor. As the Court discusses in greater detail below (*see infra* § IV.A.3), such double counting of witnesses is improper.

[4] It is undisputed that any potential witnesses from non-parties HAEC and HMG R&D are located in the Republic of Korea and not subject to compulsory process in either CDCA or EDTX.

No doubt it would be unreasonable for the Court to heavily weigh every single employee of HAEA (a number not even in the record before the Court) as favoring transfer under this factor; likewise, it would be unreasonable to afford zero weight to any potential, relevant HAEA employees that do reside within CDCA. While Defendants are correct that the HAEA employees should not be discounted "just because individual employees were not identified," *In re HP Inc.*, 826 F. App'x 899, 903 (Fed. Cir. 2020), the Court still needs a reasoned basis to afford weight to those employees under this factor.

The only evidence in the record on this point is the Declaration of Sujith Somasekharan, which, in a single sentence, provides that "HAEA employees with whom [KUS] work[s] on these [Kia Connect and Digital Key] technologies are predominantly located in the Los Angeles area." (Dkt. No. 31-1). Based on Defendants' own representation, they work with these HAEA employees and surely could identify specific individuals if they so desired. The Court further notes that Defendants only represent that the HAEA employees are "***predominantly***" located in the Los Angeles area, providing no certainty that any relevant witnesses would actually be subject to the subpoena power of the CDCA. At its base, the Court finds Mr. Somasekharan's declaration devoid of information readily attainable (or already possessed) by Defendants that could provide the necessary insight to resolve the issue. As the Federal Circuit has repeatedly noted, "it is reasonable to reject vague and unsupported statements regarding the location of potential witnesses or sources of proof." *In re HP Inc.*, 826 F. App'x at 903 (citing *In re Apple Inc.*, 743 F.3d 1377, 1379 (Fed. Cir. 2014)). While the Court will not zero out the weight of potential HAEA witnesses entirely, the Court cannot place significant weight on a single vague and carefully worded sentence devoid of relevant details. Accordingly, while the Court finds that these potential HAEA witnesses generally favor transfer to CDCA, the Court does not afford them significant weight.

On the other hand, Plaintiff specifically identifies three third-party prior art witnesses located in EDTX—Scott J. Hoover (Allen, Texas), Joseph Hilburn (Frisco, Texas), and Paul Hubner (McKinney, Texas)—who are listed inventors on U.S. Patent No. 8,816,845 (the "'845 Patent"). The basis for these individuals' relevance is as follows: (1) Defendants' Initial and Additional Disclosures state that "the following individuals are likely to have discoverable information on the subject of prior art: <u>individuals listed in patents</u>, publications and other references <u>in the file histories of the patents-in-suit</u>, and any related patents or related applications" (Dkt. No. 51-1 at 6 (emphasis added)); and (2) these three individuals are named inventors on one out of hundreds of prior art references listed in the Asserted Patents (Dkt. No. 1-2 at (56 (References Cited); Dkt. No. 1-4 at (same); Dkt. No. 1-6 at (same))).

Defendants contend that these prior art witnesses "should be afforded no weight as there is no evidence that [the '845 Patent] is particularly important, and 'inventors of prior art rarely, if ever, actually testify at trial.'" (Dkt. No. 46 at 4 (quoting *Realtime Data*, 2017 WL 772653, at *8)). While the Court agrees that prior art witnesses are rarely called to testify at trial, the Federal Circuit has explicitly rejected the argument that Defendants now make. *See In re Hulu, LLC*, No. 2021-142, 2021 WL 3278194, at *3 (Fed. Cir. Aug. 2, 2021) ("[T]he district court erred by ignoring all of Hulu's proposed prior art witnesses for the reason that 'prior art witnesses are generally unlikely to testify at trial....'") (citation omitted).

The Federal Circuit in *Hulu* also noted the potential relevance of prior art witnesses in general and particularly where the prior art at issue is referenced in the asserted patents: "certain of [the] proposed prior art witnesses directly related to prior art that was specifically mentioned in the asserted patents themselves, heightening their potential relevance." *Id.* In *Hulu* the prior art witnesses related to prior art systems discussed by the inventors in the specification of the asserted

patents. By contrast, the prior art witnesses identified by Plaintiff here are only related to one out of hundreds of references listed on the face of the Asserted Patents. As such, this Court is unconvinced that these witnesses have any particularly "heighten[ed]" relevance to this case. Nonetheless, if it would be improper to "requir[e] a defendant to show that the potential witness has more than relevant and material information at this point in the litigation or risk facing denial of transfer on that basis," it would no doubt be improper to require Plaintiff (who bears no burden) to do so. *In re Genentech, Inc.*, 566 F.3d 1338, 1343 (Fed. Cir. 2009). Accordingly, the Court is unpersuaded by Defendants' argument that the '845 Patent is not "particularly important" to this case such that the impact of the prior art witnesses identified by Plaintiff should be zero.

Having considered the witnesses identified by both parties, the Court concludes that neither party has established that either forum would be more convenient than the other due to its ability to compel witnesses. As such, the Court finds that this factor is neutral in the transfer analysis.

### 3.    *The Cost of Attendance of Willing Witnesses*

Defendants argue that "the Central District of California is more convenient for the potential party and non-party witnesses as they are all located in California—none are located in the Eastern District of Texas—or can more easily travel to California." (Dkt. No. 31 at 7). Plaintiff argues that this factor weighs against transfer because six party employees of KUS reside in or near EDTX as compared to only two potential witnesses identified by Defendants (Mr. Somasekharan and Ms. Lim). (Dkt. No. 46 at 10). Plaintiff contends that the Court should not consider any unnamed witnesses in CDCA or the Republic of Korea, not the least of which because "it would be impossible for the Court (or Emerging Auto) to test whether an unnamed witness is relevant or even a 'willing witness.'" (*Id.*).

For the reasons discussed below, the Court finds that this factor favors transfer. In total, the parties identify potential willing witnesses from six different entities: the three parties (Plaintiff, KC, KUS) and three non-party Hyundai entities (HAEA, HAEC, and HMG R&D). The location of the purported witnesses from each entity is summarized in the below table:

| Entity | Location of Witnesses | Named Witnesses |
|---|---|---|
| KUS | CDCA and EDTX | CDCA: Mr. Somasekharan and Ms. Lim<br>EDTX[5]: Efren Arias, Scott Martin, Mark Taylor, Jesse Herrera, Amber Parham, and Corin Seale |
| Plaintiff | NDCA and EDCA | NDCA: Albert Penilla<br>EDCA: Angel Penilla |
| KC | The Republic of Korea | None |
| HAEC | The Republic of Korea | None |
| HMG R&D | The Republic of Korea | None |
| HAEA | CDCA | None |

As shown in the above table, the only witnesses specifically identified and named by the parties relate to Defendant KUS and Plaintiff; all other potential witnesses are unnamed and uncertain in number.

As an initial matter, the Court addresses the parties' arguments regarding unnamed witnesses. As discussed for the preceding factor (*see supra* § IV.A.2), the Court will not entirely discount witnesses for this factor simply because they have not been specifically named. However, the fact that Defendants have failed to specifically identify most of the witnesses they rely upon

---

[5] All six witnesses identified by Plaintiff "live and work in or near this District" as discussed below in greater detail. (Dkt. No. 46 at 7).

for this factor—including any willing witnesses at all from KC, HAEA, HAEC, and HMG R&D—seriously hamstrings the Court's ability to consider such witnesses in this analysis. *See Godo Kaisha IP Bridge 1 v. Broadcom Ltd.*, No. 2:16-CV-0134-JRG-RSP, 2017 WL 750290, at *5 (E.D. Tex. Feb. 27, 2017) ("[E]ven though there is no requirement that the movant identify 'key witnesses,' or show 'that the potential witness has more than relevant and material information,' the movant must still provide enough information to allow the Court to make the required assessment.") (quoting *In re Genentech, Inc.*, 566 F.3d at 1343-44). An analysis of the costs of attendance for willing witnesses factor is necessarily affected by the number of relevant witnesses at issue and those witnesses' specific factual circumstances. While the Court accepts the assumption, based on Defendants' arguments, that such unnamed witnesses would be willing, the Court has no basis to afford these unnumbered, hypothetical witnesses the same weight as those specifically identified by the parties.[6] Having qualified the Court's view on these unidentified witnesses, the Court next turns to an analysis of each category of witnesses, beginning with the party witnesses.

### i.    KUS Witnesses

Defendants contend that "[a]ny KUS witness that would be expected to testify in this case regarding issues relevant to Emerging Auto's allegations . . . will be located in California." (Dkt. No. 31 at 7 (citing Dkt. No. 31-1 (Somasekharan Decl.), ¶ 5; Dkt. No. 31-2 (Mittermiller Decl.), ¶ 3)). Specifically, Defendants note that "Kia's U.S.-based employees that work on the accused Digital Key technology (including Mr. Somasekharan and Ms. Lim) are based in its office in Irvine,

---

[6] Logic dictates that these unnamed witnesses, to the extent they materialize, are unlikely to be as critical as the witnesses actually identified by the parties, as supported by Defendants' representation that Mr. Somasekharan and Ms. Lim "are indisputably the KUS employees having key knowledge regarding the accused Kia Connect and Digital Key functionality." (Dkt. No. 48 at 2).

California, within the Central District of California, as are any KUS employees with information on sales and marketing in the United States." (*Id.*).[7]

In response, Plaintiff argues that with respect to the KUS witnesses, venue discovery revealed that "there are numerous such KUS witnesses that live and work in or near this District," including Efren Arias[8] and Scott Martin[9] (District Sales Managers), Mark Taylor[10] (Senior District Sales Manager), Jesse Herrera[11] (Regional Sales Manager), Amber Parham[12] (Retail Marketing Manager), and Corin Seale[13] (Retail Marketing Analyst). (Dkt. No. 46 at 8). Plaintiff contends that "[i]n addition to having relevant sales and marketing knowledge generally, [Arias, Martin, and Taylor] 'interact with dealers to confirm that Kia Connect is addressed as part of the vehicle delivery process,'" meaning "these witnesses are also relevant to induced infringement – i.e., the inducement of dealerships and in turn, customers." (*Id.* (quoting Dkt. No. 46-3 at 6)). Plaintiff further contends that Herrera, Parham, and Seale perform marketing, sales, and other related operations for KUS from the Plano office. (*Id.*). In sum, Plaintiff argues that "this factor weighs against transfer because there are far more KUS witnesses identified by the parties working in Plano, Texas than in CDCA." (*Id.* at 9).

In reply, Defendants argue that the "identification of Mr. Somasekharan and Ms. Kim by name should not diminish, or otherwise necessitate exclusion from the transfer analysis of, other KUS witnesses located in CDCA having knowledge regarding Kia Connect and/or Digital Key, including training for dealers on these features." (Dkt. No. 48 at 2). With respect to the KUS employees in the company's Plano office, Defendants argue that the "evidence of record confirms

---

[7] KUS' headquarters are in Irvine, California, roughly 1,400 miles from Marshall, Texas. (*Id.*).
[8] ██████████████████████. (*Id.* at 8).
[9] ██████████████████. (*Id.*).
[10] ███████████████████. (*Id.*).
[11] ██████████████. (*Id.*).
[12] ███████████████. (*Id.*).
[13] ███████████████. (*Id.*).

that none of the six KUS Texas employees identified by EA have information regarding the accused Kia Connect or Digital Key features, including marketing and sale of those features." (*Id.* (citing Dkt. No. 46-3)). Defendants further contend that "these Texas employees' knowledge and responsibilities are limited to the Southwest region, while KUS' employees in CDCA have nationwide knowledge and responsibilities." (*Id.* at 3 (citing Dkt. No. 46-3 at 6-7; Dkt. No. 31-1; Dkt. No. 31-2)). As such, Defendants argue that Plaintiff "has failed to show 'any evidence supporting an inference that [the Texas employees] have any knowledge of or connection to this specific dispute.'" (*Id.* (quoting *In re TikTok, Inc.*, 85 F.4th 352, 360 n.9 (5th Cir. 2023))).

In sur-reply, Plaintiff first argues that "Defendants must concede these [Plano-based witnesses] have relevant knowledge of the sales and marketing of the ***accused Kia automobiles***," and that "witnesses with knowledge of the sales and marketing of the accused Kia automobiles necessarily have knowledge of the features of automobiles." (Dkt. No. 51 at 2). Plaintiff next argues that "[w]hile sales and marketing of a certain region—especially a region that covers a vast area of the country—is in and of itself highly relevant, the record evidence further demonstrates the witnesses' relevance spans the country, as they are tasked with creating and implementing KUS's sales and marketing policies." (*Id.* (citing Dkt. No. 46-5)).

The Court finds that, on balance, the KUS employees slightly favor transfer. As an initial matter, the Court refuses to adopt the raw counting methodology of "six vs two" proposed by Plaintiff. Convenience-based transfer analysis does not lend itself to such a formulaic approach. Rather, the Court must "assess the relevance and materiality of the information the witness[es] may provide." *In re Genentech, Inc.*, 566 F.3d at 1343.

Defendants have specifically identified two witnesses "having key knowledge" regarding the accused functionality: Mr. Somasekharan (KUS' National Manager, Connected Car and

Mobility) and Ms. Lim (KUS' Senior Product Manager for the Digital Key feature). (Dkt. No. 31 at 4). Plaintiff does not dispute the relevance of these witnesses, nor could it. Mr. Somasekharan and Ms. Lim's presence in the CDCA favors transfer to that district. While Defendants generally contend that "other KUS witnesses located in CDCA hav[e] knowledge regarding Kia Connect and/or Digital Key," the Court has no way to assess whether those "other KUS witnesses" could provide any relevant, material information that is not wholly duplicative of that provided by Mr. Somasekharan and Ms. Lim. Such likely duplication makes it uncertain these potential witnesses would even be sought for trial testimony. As such, on the limited information provided by Defendants, the Court awards these potentially duplicative "other KUS witnesses" little additional weight in the transfer analysis.

On the other hand, Plaintiff has identified six specific individuals living near, and working from, KUS's Plano office in this District. The Court finds that these witnesses are relevant to this dispute at least based on their knowledge of the sales and marketing of the accused vehicles and, in the case of Arias, Martin, and Taylor, their relationship to Plaintiff's induced infringement claims. *Cf. In re Genentech, Inc.*, 566 F.3d at 1344 ("The petitioners have identified witnesses relevant to [topics that might be issues at trial], and the identification of those witnesses weighs in favor of transfer."). While it is "not necessary for the district court to evaluate the significance of the identified witnesses' testimony" (*id.*), like KUS' "other witnesses" the Court notes that testimony from at least some of these six witnesses would likely be duplicative of the others. For instance, Plaintiff describes the relevant work of Arias, Martin, and Taylor based on the same job description without any differentiation among the individuals. *See* (Dkt. No. 46 at 7-8). As for the remaining three witnesses—Herrera, Parham, and Seale—the job descriptions referenced by Plaintiff all relate only generally to sales and marketing tasks within the Southwest region. *See* (*id.*

at 8 (quoting Dkt. Nos. 46-3, 46-7, 46-8)). The Court further notes that the sales and marketing testimony from these identified witnesses could also possibly be provided by the unnamed KUS employees in Irvine who Defendants contend are responsible for nationwide sales of the accused vehicles. (Dkt. No. 31 at 4). While the Court has noted the difficulties with assigning the appropriate weight to such unidentified witnesses, any such witnesses in Irvine would—like the six KUS employees in Texas—be relevant to this dispute.

Having considered the various KUS witnesses identified by the parties, and assessing their relevance to the case, the Court concludes that these witnesses on balance slightly favor transfer to CDCA.

### ii.   *Plaintiff Witnesses*

Defendants contend that CDCA would be more convenient for Plaintiff because its members and the inventors of the Asserted Patents "are located in Scotts Valley, California, only 300 miles away from the Central District of California compared to over 1,600 miles from the Eastern District of Texas." (Dkt. No. 31 at 9 (citing Dkt. No. 1, ¶ 2)).

Plaintiff argues that "[g]iven the two inventors will need to fly to either venue (either 1.5 hours from the San Francisco Bay Area to Los Angeles or 3.5 hours to Dallas), the transfer analysis is neutral with regard to them." (Dkt. No. 46 at 10).

With respect to Plaintiff's witnesses located in California but outside of the CDCA, the Court finds that these witnesses slightly favor transfer to CDCA. While it may be true that Plaintiff's named inventors must fly regardless—and that "an extra two hours on a plane is not inconvenient" to them (Dkt. No. 46-2 (Penilla Decl.))—the distance of such flights would be more than doubled by travel to this District for trial. A doubling of travel distance is a material additional

18

burden, even considering said witnesses' desire to attend trial in this District. As such, Plaintiff's party witnesses weigh slightly in favor of transfer to CDCA on this factor.

### iii. *Korean Witnesses: KC, HAEC, and HMG R&D*

Defendants argue that CDCA is "clearly more convenient to KC and its witnesses than this District," as "KC does not maintain an office in this District, and none of its employees are located in this District." (Dkt. No. 31 at 7). Furthermore, "to the extent any of KC's witnesses are required to travel from Korea to testify at trial, the Central District of California would be a far more convenient forum than traveling to Texas given the presence of KUS' offices in Irvine, California." (*Id.*). Likewise, Defendants argue that "[t]here are also non-parties [HAEC and HMG R&D] whose employees are likely to have knowledge relevant to this dispute that reside and/or work . . . in Korea," and that CDCA "would clearly be more convenient for those non-party witnesses for the reasons outlined above with respect to . . . KC witnesses." (*Id.* at 9).[14] Defendants note that travel to CDCA from Korea (~6,000 miles) is shorter than travel to EDTX from Korea (~7,000 miles), making CDCA more convenient for these Korean witnesses. (*Id.* at 7).

Plaintiff argues that "Korean witnesses are neutral in the transfer analysis" because they must "travel a significant distance regardless of any transfer." (Dkt. No. 46 at 9 (internal quotation omitted)).

---

[14] The Court notes that Defendants have provided no declaration or otherwise indicated that these unnamed witnesses from non-parties HAEC and HMG R&D would actually be willing. As the Federal Circuit has instructed, "when there is no indication that a non-party witness is willing, the witness is presumed to be unwilling and considered under the compulsory process factor." *In re DISH Network L.L.C.*, No. 2021-182, 2021 WL 4911981, at *3 (Fed. Cir. Oct. 21, 2021) (internal quotation omitted). As this Court stated with respect to the compulsory service factor, any HAEC and HMG R&D employees would reside in the Republic of Korea, far outside the subpoena power of either proposed forum. *See supra* § IV.A.2. That such potential witnesses are not subject to the subpoena power of any court in the United States does not transform them into willing witnesses that should then be analyzed under this factor. Nonetheless, as the Court finds that any proposed Korean witnesses would not face a practically significant additional burden in traveling to EDTX rather than CDCA, the Court's analysis does not change even considering these additional Korean witnesses under this factor.

With respect to Korean-resident employees of KC and non-parties HAEC and HMG R&D, it is undisputed that any such witnesses would have to travel roughly 6,000 miles to reach the CDCA and 7,000 to attend trial in this District. Accordingly, these witnesses will already be traveling a substantial distance such that any difference in travel time between this Court and the CDCA is unlikely to impose a practically significant additional burden. "Although it might be true that these individuals will need to travel a greater distance to reach [Marshall] than [CDCA], and although a flight from [the Republic of Korea] to [CDCA] might take a bit less time than from [the Republic of Korea] to [Marshall], in either instance these individuals will likely have to leave home for an extended period of time and incur travel, lodging, and related costs." *Cf. In re Apple Inc.*, 979 F.3d 1332, 1342 (Fed. Cir. 2020) (holding that "the 100-mile rule should not be rigidly applied where witnesses will be required to travel a significant distance no matter where they testify") (internal quotations omitted). As such, while these witnesses may be "'slightly more inconvenienced by having to travel to [Texas]' than [California]," their residences far from either proposed forum lessens their significance with respect to this factor. *Id.* (quoting *In re Genentech, Inc.*, 566 F.3d at 1348). Furthermore, and as noted above, the actual burdens that would be imposed on these Korean witnesses are almost entirely speculative where, as here, Defendants have provided no particularized information as to these potential witnesses.

With respect to KC, Defendants further contend that "the Central District of California would be a far more convenient forum than traveling to Texas given the presence of KUS' offices in Irvine, California." (Dkt. No. 31 at 8 (citing Dkt. No. 31-3, ¶ 4)). However, the only support Defendants provide for this conclusion is a single sentence to the same effect from the Declaration of Yei Jin Kim (KC's Senior Counsel). *See* (Dkt. No. 31-3, ¶¶ 1, 4)).[15] Unsupported attorney

---

[15] Notably, Yei Jin Kim is not an identified witness for this factor.

argument is not transformed into convincing evidence merely by including it in a declaration. Indeed, the Court can ascertain no reason why the subsidiary's headquarters in Irvine, California would alleviate the travel burdens on KC witnesses flying in from the Republic of Korea—Defendants certainly provide no such reasoning. Regardless of KUS' presence in the district, "these individuals will [] have to leave home for an extended period of time and incur travel, lodging, and related costs." *In re Apple Inc.*, 979 F.3d at 1342. Absent any evidence in the record—or even explanation in support of Defendants' position—the Court cannot conclude that CDCA would be more convenient for KC's Korean employees simply due to the presence of a related entity's offices in that district.

### iv.   *HAEA Witnesses*

Defendants argue that "[t]here are also [HAEA] . . . employees [who] are likely to have knowledge relevant to this dispute that reside and/or work in the Central District of California," and that CDCA "would clearly be more convenient for those non-party witnesses for the reasons outlined above with respect to KUS . . .  witnesses." (Dkt. No. 31 at 9).

With respect to these potential HAEA witnesses, Defendants point to the same employees already identified for the previous factor—"HAEA employees that work on design and development of the accused Digital Key feature" (Dkt. No. 31 at 9)—which is improper. As this Court has recently expressed in *Liberty Access Tech. Licensing LLC v. ASSA ABLOY AB*, No. 2:22-cv-00507-JRG, Dkt. No. 82 at 14-15 (E.D. Tex. Dec. 5, 2023), and as it reiterates now, such double counting of witnesses is improper.

Either these HAEA witnesses require compulsory process to secure their attendance (assessed under the second private interest factor) or they are willing witnesses (assessed under the third private interest factor). They cannot be both. *See In re DISH Network L.L.C.*, 2021 WL

4911981, at *3 ("[W]hen there is no indication that a non-party witness is willing, the witness is presumed to be unwilling and considered under the compulsory process factor.") (internal quotation omitted); *cf. Enovsys LLC v. T-Mobile USA, Inc.*, No. 2:21-CV-00368-JRG, 2022 WL 2161028, at *5 (E.D. Tex. June 14, 2022) ("The non-party witnesses identified by T-Mobile in this factor were also identified by T-Mobile in the previous factor. The Court is perplexed as to why compulsory process would be required for a willing witness. …. This Court has repeatedly cautioned litigants not to conflate the two factors and the necessary showing required to demonstrate willingness or unwillingness."). This Court has already assessed HAEA's employees under the second private interest factor, as Defendants argued it should, and the Court will not improperly double count the impact of these unidentified witnesses by also analyzing them under the third private interest factor. *See In re Apple Inc.*, 979 F.3d at 1340 (cautioning against "inappropriately count[ing] twice" the convenience of witnesses under multiple factors).[16]

### *v.    Conclusion Regarding Willing Witnesses*

Having considered the witnesses identified by the parties, including those witnesses not specifically named or otherwise identified, the Court finds that this factor favors transfer to CDCA.

### 4.    *All Other Practical Problems that Make Trial of a Case Easy, Expeditious, and Inexpensive*

Defendants argue that "[t]here are no practical problems with transferring this case," as it "is in its infancy: at the time of filing this motion, no discovery has been conducted and the Court has had little involvement in the case." (Dkt. No. 31 at 11). Defendants contend that "[o]ther than

---

[16] The Court recognizes that some relevant HAEA witnesses—to the extent more than one exists—could be willing and others unwilling. However, on the record before the Court, there is no basis to make such a determination. Accordingly, and consistent with the Court's practice for specifically identified witnesses, the Court declines to double count the potential HAEA witnesses. To do otherwise would create a perverse incentive for parties to withhold relevant details regarding the identity of witnesses from the Court so that an unidentified collective of witnesses may count under both private interest witness factors. Such a result would certainly be improper.

involving three of the same patents, Emerging Auto's case against Toyota is entirely distinct from the case against Kia," as "Kia and Toyota are separate entities, and the Kia accused products are distinct from the Toyota accused products," meaning "it is unlikely that there will be much, if any, overlap in the substantive facts and discovery performed in each case." (*Id.* at 12).

In response, Plaintiff argues that this Court "recognized the efficiencies of retaining this matter in the District by consolidating it with Case No. 2:23-cv-434-JRG (the Toyota matter) for all pretrial issues." (Dkt. No. 38 at 10). Plaintiff notes that the *Toyota* Case includes allegations of infringement for every claim asserted against the Kia Defendants, and that the case against Toyota will remain in this District, as Toyota has not sought transfer. (*Id.*). Plaintiff contends that "both cases involve the same or similar issues of claim construction and validity." (*Id.* (internal quotations omitted)).

The Court finds that this factor weighs materially against transfer. The Court disagrees with Defendants' conclusion that the consolidated *Toyota* Case cannot result in this factor weighing against transfer. The core of Defendants' argument relies on the Federal Circuit's recent *In re Google LLC* decision ("*Google III*"), but that opinion only states that this factor *standing alone* cannot justify a denial of transfer in view of a "clear case for transfer in light of the imbalance on the other factors." 58 F.4th 1379, 1383 (Fed. Cir. 2023). That does not mean, however, that concerns of judicial economy cannot factor into the transfer analysis. *See In re EMC Corp.*, 501 F. App'x 973, 976 (Fed. Cir. 2013) ("[W]e have held that a district court's experience with a patent in prior litigation and the co-pendency of cases involving the same patent are permissible considerations in ruling on a motion to transfer venue."). Indeed, the Federal Circuit has "repeatedly noted that judicial economy may play a prominent role in a district court's transfer analysis." *In re Caring Drilling Tech., Ltd.*, No. 2015-139, 2015 WL 10936672, at *1 (Fed. Cir.

Aug. 7, 2015); *In re Volkswagen of Am., Inc.*, 566 F.3d 1349, 1351 (Fed. Cir. 2009) ("[T]he existence of multiple lawsuits involving the same issues is a paramount consideration when determining whether a transfer is in the interest of justice.").

Here: (1) all three patents and every claim asserted against the Kia Defendants are also asserted in the *Toyota* Case, (2) the accused technologies are "substantially similar,"[17] and (3) the two cases have been consolidated for pre-trial proceedings. *Cf. In re Canrig Drilling*, 2015 WL 10936672, at *1 (finding the district court's conclusion that this factor weighed against transfer was adequately supported where "[a]ll three lawsuits deal with the same patent, same technology, and substantially similar products and have been consolidated for pre-trial proceedings"). The fact that the *Toyota* Case includes two additional patents at issue is immaterial. The Court's resolution of overlapping issues in the two cases will necessarily be easier, more expeditious, and less expensive than trying these cases separately—indeed, those are the underlying motivations behind consolidation in the first place. Furthermore, this Court's simultaneous adjudication of the *Toyota* Case will benefit judicial economy and avoid inconsistent determinations across the Asserted Patents, not only because this Court will be familiar with the Asserted Patents, but because this Court will no doubt face and rule upon identical issues across the two consolidated cases. *Cf. Enovsys LLC*, 2022 WL 2161028, at *6 ("[I]t would be inefficient to transfer a case to a different venue when the Verizon Case involving the same Asserted Patents and asserted claims is currently pending . . . before the undersigned."). While this Court recognizes that concerns of judicial

---

[17] *See* (Dkt. No. 46 at 2 (Plaintiff representing that "the accused technology at issue in the Accused Kia Vehicle Instrumentalities and the Accused Toyota Vehicle Instrumentalities is substantially similar, namely Kia's 'Kia Connect' and 'Digital Key' functionality and Toyota's 'Remote Connect' and 'Digital Key' functionality, along with the servers that enable that functionality") (citing Dkt. No. 46-9 at 1-5; Dkt. No. 46-10 at 1-7); Dkt. No. 48 (Defendants not contesting Plaintiff's representation of substantial similarity)).

economy are not dispositive, the Court finds that this factor weighs materially against transferring the present case.

**B.  Public Interest Factors**

> ### *1.    The Administrative Difficulties Flowing from Court Congestion*

Defendants argue that this factor is neutral because "[a]lthough the Eastern District of Texas has tended to resolve patent cases in slightly less time than the Central District of California, the weighted filings per judgeship is higher in the Eastern District of Texas (660) than in the Central District of California (596)." (Dkt. No. 31 at 13 (citing Dkt. No. 31-7)).[18] Defendants further argue that because "Emerging Auto is a non-practicing entity" recent Federal Circuit law requires that this factor be given no weight in the transfer analysis. (*Id.* (citing *Google III*, 58 F.4th at 1383)). Accordingly, "even if there were a delay in the present case resulting from prospective congestion, there is no practical impact from such congestion and this factor should be given no weight." (*Id.*).

In response, Plaintiff argues that because "Defendants concede that this District resolves patent cases more quickly than CDCA," this factor "weighs against transfer." (Dkt. No. 46 at 12). Plaintiff notes that the difference in time to trial is "substantial: civil cases in this District proceed nearly ten months and 50% faster," and the same is true for patent cases. (*Id.*). Plaintiff contends that the Federal Circuit's decision in *Google III* is inapplicable here because "Emerging Auto is an inventor-owned company that is attempting to actively prosecute and enforce its intellectual property against infringers." (*Id.* at 13). As Plaintiff explains, "[d]ragging this matter out in two different forums would prejudice Emerging Automotive because of the added expense associated with litigating in two venues and delayed resolution of its claims." (*Id.* at 13-14).

---

[18] Plaintiff argues that "weighted filings" is "not the relevant inquiry." (Dkt. No. 46 at 12). Without any further rationale provided by Defendants, the Court agrees with Plaintiff that "weighted filings" is a less helpful measure when actual time-to-trial statistics are available.

The Court finds that this factor weighs slightly against transfer. Here, the parties agree that EDTX has a faster median time-to-trial than CDCA. *See* (Dkt. No. 31 at 13); (Dkt. No. 38 at 12).[19] While Defendants contend that this difference is only "slight[]," the Court disagrees. Indeed, as Plaintiff noted in its Response—and as Defendants did not dispute—civil cases proceed to trial nearly 50% faster in this District than in CDCA; the same relationship holds true for patent cases (22-month average in EDTX vs 31-month average in CDCA). *See* (Dkt. No. 46-11). Nonetheless, this Court recognizes that the Federal Circuit has instructed that this factor should not weigh against transfer when the plaintiff "is not engaged in product competition in the marketplace and is not threatened in the market in a way that, in other patent cases, might add urgency to case resolution." *Google III*, 58 F.4th at 1383.[20] Here, there is no dispute that Plaintiff is not a competitor in the marketplace. While this Court finds it perplexing to consider the marketplace status of the parties in assessing this *public* interest factor related to court congestion, it is bound by the Federal Circuit's decision in *Google III* to afford this factor no weight based on time-to-trial differences. Nevertheless, that is not the end of the inquiry.

The Court is convinced that the specific posture of this case makes it such that transfer would only serve to *increase* court congestion. As Plaintiff noted, this case has been consolidated with *Emerging Automotive LLC v. Toyota North America, Inc., et. al.*, No. 2:23-cv-00434-JRG (the "*Toyota* Case") for all pretrial matters. (Dkt. No. 15). Every claim asserted against the Kia Defendants has also been asserted against the Toyota Defendants. (Dkt. No. 46 at 1-2). Defendants do not dispute that the accused instrumentalities between the cases are "substantially similar." *See* (*id.*; Dkt. No. 48 (Defendants not contesting Plaintiff's representation of substantial similarity)).

---

[19] This is not a case where "the parties[] [cite] opposing statistics regarding the rate of disposition in the two venues." *In re Genentech, Inc.*, 566 F.3d at 1347.

[20] As this Court has previously noted, a faster average time to trial leads to the more efficient and economical resolution of cases, something all litigants can value regardless of market position.

As is the case with consolidation in general, these present cases were consolidated to streamline the proceedings by removing unnecessary duplication. There is no dispute that the *Toyota* Case will remain pending before this Court. As such, the practical effect of transferring the case against the Kia Defendants would be to duplicate these proceedings. It is axiomatic that such a result would necessarily increase court congestion—not just for the present litigants but for the public at large. As such, the Court finds that this factor weighs slightly against transfer.

### 2. The Local Interest in Having Localized Interests Decided at Home

Defendants argue that this factor favors transfer because "Kia's U.S.-based activities related to the accused technology are primarily centered in the Central District of California." (Dkt. No. 31 at 13 (citing Dkt. No. 31-1 (Somasekharan Decl.), ¶¶ 4-7)). Specifically, Defendants contend that the "accused Digital Key technology is developed, tested, and supported from the Central District of California and Korea and marketed and sold from the Central District of California, giving the California court a strong interest in this litigation." (*Id.* at 14). Further, Defendants contend that "[b]ecause this lawsuit will impact two California companies and their employees/members, the Central District of California's interest in this case is significant." (*Id.* at 13). Finally, Defendants note that "this case has no connection to the Eastern District of Texas that could not be drawn to any other district" due to the nationwide marketing of Kia's vehicles. (*Id.* at 14).

In response, Plaintiff argues that "in this District there is a relevant KUS office, with ***six relevant KUS witnesses*** and a document server with KUS documents," whereas Defendants "name just ***two witnesses*** in CDCA." (Dkt. No. 46 at 14 (emphasis in original)). Plaintiff contends that because "there are more relevant witnesses in this District than in CDCA," there "is a greater local

interest [in EDTX] on the record before the Court." (*Id.*). Further, Plaintiff argues that Defendants' marketing activities in this District mean that this factor weighs against transfer. (*Id.* at 14-15).

In reply, Defendants argue that, while Plaintiff "claims that this District has a greater local interest in the present dispute than the CDCA based on the KUS office and document server located in this District," "the functionality accused of infringing the Asserted Patents was developed in CDCA (along with Korea), and its marketing and sales are controlled from that location." (Dkt. No. 48 at 5). Defendants further note that "sales of Kia vehicles in general (that may support Kia Connect and Digital Key)—EA's identified alleged tie to this District—are made ineffectively every district in the United States," meaning that "any interest this District has in the present dispute would be the same in every district in this country." (*Id.*). Defendants contrast this with CDCA "where the accused functionality was designed and/or developed, at least in part, and where the sales and marketing strategy for the U.S. is developed and executed." (*Id.* (citing Dkt. No. 31-1, ¶¶ 3, 5-8)).

The Court finds that this factor weighs slightly in favor of transfer. Defendants point to non-party HAEA (headquartered in CDCA) and Defendant KUS (same), along with those entities' employees to support Defendants' position that the CDCA has a "compelling local interest" in this case. As an initial matter, the Court takes note that HAEA is not a named party to this action. While it may be true that source code related to the accused functionalities may come from HAEA, that does not elevate that entity's status to that of a party or otherwise place them as a key figure in the transfer analysis. The Court is unconvinced that the presence of non-party HAEA in the CDCA necessarily transforms this into "the sort of localized case where the citizens of [CDCA] have a greater 'stake' in the litigation than the citizens of [EDTX]," especially where "the defendants and

28

the witnesses are located across the state[,] across the country," and even across the globe. *Planned Parenthood*, 52 F.4th at 631–32.

As to Defendant KUS, the Court takes well Defendants' argument that the accused Digital Key technology is developed, tested, and supported from the Central District of California (in addition to the Republic of Korea) and that such development imparts CDCA with a greater local interest in this dispute. Furthermore, Defendants have identified two particular KUS witnesses— Mr. Somasekharan and Ms. Lim—both of whom reside in CDCA and possess knowledge related to the accused technology. These facts impart the citizenry of CDCA with a localized interest in the resolution of this case.

However, EDTX is not without any interest itself. In addition to selling the accused vehicles in this District, Defendant KUS also employs six individuals with relevant knowledge in or near this District. Indeed, as Plaintiff argues and Defendants do not contest, these identified individuals' actions may evidence Plaintiff's induced infringement allegations. Accordingly, the citizenry of EDTX also has a localized interest in this dispute. *See In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1336 (Fed. Cir. 2009) (finding the local interest in the case strong where "the cause of action calls into question the work and reputation of several individuals residing in or near that district and who presumably conduct business in that community").[21] This is not a case where jury

---

[21] The Court recognizes that "Kia markets its vehicles and associated technologies nationwide," but that does not *ipso facto* mean that "this case has no connection to the Eastern District of Texas" as Defendants argue. (Dkt. No. 31 at 14). As noted, Plaintiff's allegations bring into question the work and reputation of particular individuals residing within and near this district, which necessarily provides the citizenry of this District with a particularized interest in the dispute. *In re Hoffmann-La Roche Inc.*, 587 F.3d at 1336. The cases Defendants cite in support of the proposition that "this case has no connection to the Eastern District of Texas" are clearly distinguishable. *See In re TS Tech USA Corp.*, 551 F.3d 1315, 1321 (Fed. Cir. 2008) (noting that "[n]one of the companies have an office in the Eastern District of Texas; no identified witnesses reside in the Eastern District of Texas; and no evidence is located within the venue"); *Vigilos, LLC v. Sling Media, Inc.*, No. 2:11-CV-112-DF, 2011 WL 13156923, at *6 (E.D. Tex. July 25, 2011) (noting that it was undisputed that "Plaintiff established its presence in the Eastern District in anticipation of litigation") (internal quotation omitted). Here, Defendant KUS has an office in EDTX, identified witnesses reside in and near EDTX, and evidence is located on a server in EDTX.

duty would be "imposed upon the people of a community which has no relation to the litigation," as Defendants suggest. *Volkswagen I*, 371 F.3d at 206.

Having found that both districts have localized ties to this case, the only remaining question is whether one district has greater ties than the other. Due to the presence of Defendant KUS and its employees in CDCA (including Mr. Somasekharan and Ms. Lim), and to a lesser extent the presence of non-party HAEA, the Court finds that CDCA has a somewhat greater localized interest in the resolution of this case than EDTX.[22] Accordingly, the Court finds that on balance this factor weighs slightly in favor of transfer.

### 3. The Familiarity of the Forum with the Law that Will Govern the Case and The Avoidance of Unnecessary Problems of Conflict of Laws of the Application of Foreign Law

Plaintiff and Defendants agree that these final two public interest factors weigh neutrally in the transfer analysis. (Dkt. No. 31 at 14-15); (Dkt. No. 46 at 3). The Court sees no reason to upset the parties' agreement and accordingly considers these factors to be neutral.

## V.   CONCLUSION

In view of the foregoing factors, the Court must determine whether the Central District of California is "clearly more convenient" than the Eastern District of Texas. The Fifth Circuit has been careful to emphasize that district courts should not merely engage in a "raw counting" exercise which tallies up the factors favoring transfer and the factors militating against transfer. *In re Radmax*, 720 F.3d 285, 290 n.8 ("We do not suggest—nor has this court held—that a raw counting of the factors in each side, weighing each the same and deciding transfer only on the resulting 'score,' is the proper methodology."). Instead, the Court must make factual

---

[22] By Defendants' own admission, many witnesses will also be traveling from the Republic of Korea—these witnesses certainly will not have any localized ties to CDCA or EDTX

determinations to ascertain the degree of actual convenience, if any, and whether such rises to the level of "clearly more convenient." *See id.* Where the present and proposed forums are both roughly similar in terms of convenience, courts should not conclude that the proposed transferee forum is "clearly more convenient." *Volkswagen II*, 545 F.3d at 315. While this Court does not hold that "clearly more convenient" is equal to "clear and convincing," a movant must show materially more than a mere preponderance of convenience, lest the standard have no real or practical meaning. *See id.* When carefully applying the convenience factors and the related factual arguments in each unique case, courts should be careful not to lose sight of the plaintiff's choice of forum and its historical significance in our jurisprudence. *Id.* ("[W]hen the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected.").

Having found one factor weighs slightly in favor of transfer, one factor weighs in favor of transfer, four factors weigh neutrally, one factor weighs slightly against transfer, and the remaining factor weighs materially against transfer, the Court concludes that the Central District of California is not a "clearly more convenient" forum for this dispute. In conclusion, considering the weight of the specific factors and facts of this case, the Court is of the opinion that Defendants' Motion (Dkt. No. 31) should be and hereby is **DENIED**. The parties are directed to jointly prepare a redacted version of this Opinion for public viewing and to file the same on the Court's docket as an attachment to a Notice of Redaction within five (5) business days of this Opinion.

**So ORDERED and SIGNED this 14th day of June, 2024.**

RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE